UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KELLY J. McGEEVER,

                                             Plaintiff,

   v.                                                                                  3:05-CV-1363
                                                                                               (LEK/GJD)
COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.
_____

CHRISTOPHER CADIN, ESQ., for Plaintiff
PAUL J. LUPIA, ESQ., for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income on November 21, 2002, alleging disability beginning November 12, 2002. (Administrative Transcript ("T."), 53-55). The application was initially denied on March 24, 2003. (T. 28, 36-39). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on December 1, 2003. (T. 41, 277-314). At the hearing, testimony was taken from the plaintiff (T. 279-309), and from a vocational expert (T. 309-12).

In a decision dated January 26, 2004, the ALJ found that plaintiff was not disabled. (T. 14-21). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 23, 2005. (T. 4-7).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ's assessment of plaintiff's physical and mental residual functional capacity is not supported by substantial evidence in the record. (Plaintiff's Brief, 12-17).

(2) The ALJ violated the treating physician rule. (Plaintiff's Brief, 18-21).

(3) The ALJ failed to ask the Vocational Expert (VE) hypothetical questions containing the appropriate limitations in plaintiff's residual functional capacity. (Plaintiff's Brief, 12-17).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## FACTS

This court adopts the facts set forth in plaintiff's brief under the heading "Statement of Facts," to the extent that those facts are consistent with the facts stated in this Report-Recommendation. Plaintiff's Brief, 2-7; *see also* Defendant's Brief, 2 (incorporating plaintiff's summary of the medical and other evidence).

## DISCUSSION

1. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial

2

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated*

*Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### 3.   Treating Physicians and Residual Functional Capacity (RFC)

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not*** required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts,

as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R § 416.945; *see Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and ***may not simply make conclusory statements regarding a plaintiff's capacities***.  *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

In this case, the ALJ determined that although plaintiff's limitations precluded the performance of her past-relevant work, plaintiff retained the residual functional capacity to "lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 2 out of 8 hours; [and] sit for 6 out of 8 hours[.]"  (T. 18-19).  The ALJ additionally found that plaintiff could never climb, balance, crawl, reach above shoulder level or perform push/pull activities, she could occasionally stoop, kneel, and crouch, she was to avoid wetness, humidity, fumes, dust, hazards, and vibrations, and she was limited to unskilled or very low-level semi-skilled work and minimal contact with co-workers and supervisors with little to no contact with the public.  (T. 18).

In making this determination, the ALJ accorded significant weight to the state agency Disability Analyst's physical RFC assessment (T. 31), gave reduced weight to the opinion of plaintiff's treating physician, Dr. Darlene Denzien, specifically regarding the amount of time plaintiff was able to sit (T. 243), and accorded little weight to the report of Dr. Marylin Ordonez which stated that plaintiff had poor ratings under several categories of mental functioning.  (T. 17-18).  Plaintiff argues that the ALJ did not give proper weight to the opinions of Drs. Denzien and Ordonez

and that the ALJ improperly relied upon the state agency analyst.  The ALJ states that he

> agree[s] with the findings . . . . . [of the Disability Analyst] . . . . . and that they are worthy of significant probative value.

(T. 18-19).

The state agency Disability Analyst opined, on March 5, 2003, that plaintiff could lift up to twenty pounds occasionally and ten pounds occasionally, sit for about six hours in an eight-hour day, stand and walk for about six hours in an eight-hour day, and that she had an unlimited ability to push and pull.  (T. 31).  While the Disability Analyst is not considered to be an acceptable medical source under the Regulations, as is a treating physician, such an opinion may be used "[i]n addition to evidence from the acceptable medical sources list . . . to show the severity of [a claimant's] impairment(s)[.]"  20 C.F.R. §§ 416.913(a) & (d)(1).

The opinion of the Disability Determination Service ("DDS") was given by a ***non-medical*** Disability Analyst.  (T. 31).  There is ***no*** evidence in the record about the qualifications of this individual and ***no*** indication that the analyst has any medical training.

In regard to plaintiff's physical abilities, the ALJ states that Dr. Denzien's assessment that plaintiff was disabled was conclusory and not consistent with the record.  (T. 17).  The ALJ, however, does not point to any specific medical evidence which is inconsistent with Dr. Denzien's opinion.  The ALJ found that the Disability Analyst's opinion regarding plaintiff's physical abilities was consistent with the record and that additional restrictions were placed beyond those stated by the analyst

7

as he was giving plaintiff "the benefit of the doubt[.]"  (T. 18-19).

On September 5, 2003, Dr. Denzien opined that plaintiff was disabled from all gainful employment.  (T. 239-40).  The same day, Dr. Denzien completed a medical assessment of plaintiff's physical ability to do work-related activities.  (T. 242-45).  She reported that plaintiff could occasionally lift and carry up to twenty pounds and ten pounds frequently, sit and stand for *two hours* in an eight-hour workday, walk for one hour in an eight-hour workday, and occasionally climb, balance, stoop, crouch, kneel, crawl, and push and pull.  (T. 242-44).

Dr. Denzien specifically found that plaintiff *would only be able to sit for two hours* because "Pt has very large kidney and large liver - unable to remain comfortable w/o frequent position changes."  (T. 243).  Dr. Denzien also put restrictions on plaintiff's ability to lift, stating that "Pt has large abdominal cysts, weak walled and prone to rupture.  See CT reports."  (T. 242).  Dr. Denzien made reference to an abdominal CT scan when assessing plaintiff's ability to perform postural activities.  (T. 244).

As a basis for her clinical findings, Dr. Denzien cited her treatment history between March and September 2003, plus her review of "old records."  (T. 241).  She also cited multiple palpable cysts (T. 241), CT and ultrasound scans (T. 241), and polycystic liver and kidney disease (T. 239).  The ALJ does not discuss any of these supporting comments by Dr. Denzien or the medical records of plaintiff at Lourdes Hospital in Binghamton, New York.

The ALJ rejected Dr. Denzien's conclusion about plaintiff's disability, but did

not support that rejection by pointing to contradictory medical evidence in the record. Instead, he relied on the opinions of a non-examining state Disability Analyst, plus other consultative, one-time examinations, and the conclusions therefrom. It appears that many of the ALJ's conclusions are selective pieces of information from various reports of these one-time examiners.

This court finds that the ALJ's rejection of plaintiff's treating physician's opinion is not supported by substantial evidence in the record.

Since the ALJ relied in large part on the opinion of a non-medical reviewer, this court concludes that the ALJ's finding with respect to plaintiff's Residual Functional Capacity is not supported by substantial evidence in the record.

As for plaintiff's mental abilities, the ALJ states that Dr. Ordonez's report of "poor" ratings in several categories of mental functioning is not consistent with the medical evidence and is further contradicted by plaintiff's testimony of her daily activities. (T. 17) The ALJ's statement in this regard is not supported by substantial evidence in the record. The record contains several reports of mental examinations which show restrictions on plaintiff's mental function.

On November 21, 2003, Dr. Ordonez completed a medical assessment of plaintiff's mental ability to do work-related activities. (T. 229-31). She found that plaintiff had a fair ability to: 1) follow work rules; 2) understand, remember, and carry out simple job instructions; 3) maintain personal appearance; and 4) demonstrate reliability. (T. 229-30). However, Dr. Ordonez reported that plaintiff had a poor ability to: 1) relate to co-workers; 2) deal with the public; 3) use judgment; 4) interact

with supervisors; 5) deal with work stress; 6) function independently; 7) maintain attention and concentration; 8) understand, remember, and carry out complex job instructions; 9) understand, remember, and carry out detailed, but not complex job instructions; 10) behave in an emotionally stable manner; and 11) relate predictably in social situations. (*Id.*)

On October 7, 1999, Maria C. Morog, Ph.D., a state agency consultant, conducted a psychiatric examination.[1] (T. 246-49). Dr. Morog found plaintiff's speech was fluent, thought processes were coherent and goal directed, sensorium was clear, attention and concentration were intact, insight was fair to poor, and judgment was good. (T. 247-48). She concluded that plaintiff was able to follow and understand simple directions, perform simple rote tasks under supervision, maintain attention and concentration for job-related tasks, perform job tasks consistently, make appropriate decisions, learn new tasks, perform complex tasks independently, and relate adequately with co-workers and supervisors but that she would have difficulty dealing appropriately with the normal stresses of a competitive work place. (T. 248).

On April 3, 2001, state agency consultant Mary Ann Moore conducted another psychiatric evaluation. (T. 250-54). She reported that plaintiff's speech was fluent, thought processes were coherent and goal directed, sensorium was clear, attention and concentration were slightly impaired, and insight and judgment were fair. (T. 252). Moore opined that plaintiff was able to follow and understand simple directions and

---

[1] Plaintiff claims that she previously filed an application for benefits in 2001 but was denied and no further action was taken. (Plaintiff's Br., 12, n. 6). It is unclear whether the 1999 evaluation was considered for that application. Nevertheless, as it is part of the administrative record, the examination will be reviewed.

instructions and perform simple rote tasks under supervision but that she would have some difficulty maintaining attention and concentration for job-related tasks, learning new tasks, making appropriate decisions, dealing with everyday work stress, and dealing adequately with others. (T. 253).

On August 9, 2002, clinical social worker Linda Baker diagnosed plaintiff with major depressive and dysthymic disorder and assessed her a Global Assessment of Functioning (GAF) in the range of 55-60, which indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning.[2] (T. 257). About one month letter, on September 3, 2002, Dr. Surya A. Toraty, staff psychiatrist at the Broome County Community Mental Health Services, found that plaintiff's speech was relevant and coherent, affect was mildly depressed but appropriate to thought content, sensorium was clear, and recent and remote memory skills were fairly intact. (T. 259). Dr. Toraty gave plaintiff a GAF score of 60. (T. 260).

On November 26, 2002, clinical social worker Joe Elder stated that plaintiff was cooperative and oriented. (T. 165). He diagnosed her with panic disorder with agoraphobia and generalized anxiety disorder but noted that she was not consistently taking her Paxil. (*Id.*) On December 24, 2002, medical staff at the United Health Services Hospitals ("UHSH") stated that plaintiff's speech was coherent, affect and mood were depressed and anxious, memory was intact, and insight and judgment were good. (T. 157). She was diagnosed with panic attacks and major depression and

---

[2] The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").

given a GAF score of 70.

On February 20, 2003, Marion Graff, Ph.D., a state agency medical consultant, performed a psychiatric examination. (T. 179-183). Dr. Graff reported that plaintiff's speech was fluent, thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking, mood was depressed, affect was congruent with thought and speech, sensorium was clear, attention, concentration, and memory skills were mildly impaired due to anxiety, intellectual functioning was below average range, and insight and judgment were good. (T. 181). She opined that plaintiff was capable of following, understanding, and remembering simple instructions and directions, performing simple tasks with supervision and independently, making appropriate decisions, learning new tasks, and relating to and interacting appropriately with others but she had difficulty maintaining attention and concentration for tasks, regularly maintaining a schedule, and dealing with stress. (T. 182).

On March 13, 2003, Dr. Peter Kudler, a Board Certified Psychiatrist, and a state agency consultant, completed a mental RFC assessment. (T. 184-86). Dr. Kudler examined twenty categories of mental functioning and of those twenty, he found that plaintiff had moderate limitations in nine categories. (T. 184-85). He concluded that plaintiff was not significantly limited in any other categories. (*Id.*) The same day, Dr. Kudler also completed a Psychiatric Review Technique form. (T. 188-201). He found that plaintiff had depressive syndrome characterized by loss of interest in activities, psychomotor agitation, decreased energy, and feelings of guilt or worthlessness, and

generalized anxiety accompanied with motor tension, autonomic hyperactivity, and apprehensive expectation. (T. 191, 193). Dr. Kudler opined that plaintiff had *moderate* restrictions of activities of daily living and difficulty in maintaining social relationships and maintaining concentration, persistence, or pace. (T. 198). He further noted that plaintiff had one or two episodes of deterioration. (*Id.*)

On October 22, 2003, Dr. Anthony A. Galdieri completed a medical source statement of plaintiff's mental ability to do work related activities. (T. 206-07). He found that plaintiff had no restrictions in understanding, remembering, and carrying out short and simple instructions and slight restrictions in: 1) carrying out detailed instructions; 2) the ability to make judgments on simple work-related decisions; 3) interacting appropriately with supervisors and co-workers; and 4) responding appropriately to work pressures in a usual work setting and changes in a routine work setting. (*Id.*) Dr. Galdieri stated that plaintiff had moderate restrictions in understanding and remembering detailed instructions and interacting appropriately with the public. (*Id.*) He opined that plaintiff could manage benefits for her own interest. (T. 207).[3] The same day, Dr. Galdieri completed a Psychiatric Review Technique form. (T. 212-25). Dr. Galdieri found that medically determinable impairment existed that did not fit the diagnostic criteria, namely depressive disorder, and that she suffered from anxiety with panic attacks. (T. 215, 217). He concluded that plaintiff had mild restrictions on activities of daily living and difficulty in maintaining social relationships as well as mild to moderate deficiencies in

---

[3] Dr. Galdieri further noted that her mental impairments did not meet or equal a Listing. (T. 208-211).

13

maintaining concentration, persistence, or pace. (T. 222).

## 4.     **Vocational Expert**

Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence,[4] a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for the VE's testimony. *See De Leon v. Secretary of Health and Human Services.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based his or her opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

Plaintiff's counsel argues that the hypothetical given to the VE failed to present the full extent of plaintiff's physical and mental impairments. This court agrees. The hypothetical question submitted to the ALJ did not take into consideration the possibility that plaintiff might have to change positions frequently from sitting to standing, and whether she could perform the jobs stated by the VE in a seated and standing position. There was no consideration whatsoever of plaintiff's well documented mental conditions, including her dysthymia, inability to associate well with other individuals, her severely guarded personality, and her inability to adequately handle stress. The record contains many reports from several different psychologists concluding that plaintiff has dysthymic disorder and personality difficulties. (*See* T. 269, 182, 229, 230, 257). None of this information was included

---

[4] *Dumas*, 712 F.2d at 1554 n.4.

in the hypothetical questions.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED** pursuant to **SENTENCE FOUR** of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 17, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge